IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-2153-WJM-KAS

MARTIN MARIETTA MATERIALS, INC.,

    Plaintiff-Counterclaim Defendant,

v.

JEANNE IVERSON, and
TIMOTHY IVERSON,

    Defendants-Counterclaim Plaintiffs.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL RULE 12(b)(1) DISMISSAL OF, OR IN THE ALTERNATIVE RULE 56 SUMMARY JUDGMENT ON, DEFENDANTS' COUNTERCLAIM AND IMPOSSIBILITY DEFENSE**

---

This contract dispute is before the Court on Plaintiff-Counterclaim Defendant Martin Marietta Materials, Inc.'s ("Martin Marietta" or "MMM") Motion For Partial Rule 12(b)(1) Dismissal Of, Or In the Alternative Rule 56 Summary Judgment On, Defendants' Counterclaim and Impossibility Defense ("Motion"). (ECF No. 66.) Defendants-Counterclaim Plaintiffs Jeanne Iverson and Timothy Iverson (jointly, "Iversons") filed a response (ECF No. 68), to which Martin Marietta replied (ECF No. 71). For the following reasons, the Motion is granted in part and denied in part.

## I. STANDARDS OF REVIEW

**A.    Federal Rule of Civil Procedure 12(b)(1)**

A motion under Federal Rule of Civil Procedure 12(b)(1) is a request for the court to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A

plaintiff generally bears the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the court lacks subject-matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City & Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *1 (D. Colo. Sept. 24, 2012).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial attacks and factual attacks. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). A facial attack questions merely the sufficiency of the pleading. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack, the court takes the allegations in the complaint as true, as in a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* If those allegations establish a federally cognizable claim, jurisdiction exists. *Id.*

In contrast, if a Rule 12(b)(1) motion "challenge[s] the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court[,] '[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). On a factual attack, no presumption of truthfulness applies to the complaint's allegations. *Holt*, 46 F.3d at 1003. Instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id.* In making its decision, the court "has wide discretion to allow affidavits, other documents, and a

limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart*, 271 F.3d at 1225 (citation omitted).

Unless it is shown that no amendment of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice. *See Bruzga v. Cnty. of Boulder*, 795 F. App'x 599, 604–05 (10th Cir. 2020) (stating that a dismissal based on lack of standing should be without prejudice); see also Fed. R. Civ. P. 41(b).

**B.     Federal Rule of Civil Procedure 56**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to a proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS[1]

### A. Gravel Lease and Mining Operations

On September 13, 2004, Martin Marietta's predecessor-in-interest, Lafarge West, Inc., and the Iversons entered into the Gravel Lease, which authorized Lafarge to mine gravel and conduct related operations ("Mining Operations") on a property owned by the Iversons in Weld County, Colorado ("Property"). Lafarge assigned all its obligations, rights, and interests in the Gravel Lease to Martin Marietta. The Gravel Lease constitutes a contract between Martin Marietta and the Iversons.

Paragraph 6 of the Gravel Lease states in part that the Iversons "shall be responsible for any augmentation plan made necessary by the Company's surface exposure of groundwater, dewatering, or mining operations on the Property." Mining Operations on the Property included excavation of the "Iverson Pit," also referred to as "Iverson Mine" or "Iverson Lake."

According to Martin Marietta, after mining and dewatering ceased, the mined pit filled with groundwater. (ECF No. 66 at 5 ¶ 6.) The Iversons contest this statement, instead stating that the Iverson Pit "filled with water from the Poudre River after multiple overtopping events during mining and reclamation of the Iverson Pit." (ECF No. 68 at 3 ¶ 6.)

Mining Operations at the Iverson Pit were conducted pursuant to a permit issued by the Colorado Division of Reclamation, Mining and Safety ("DRMS"). Martin Marietta never gave written notice to the Iversons under Section 16.B of the Gravel

---

[1] The following factual summary is almost entirely based on the Movant's Statement of Material Facts in the Motion; almost all facts are undisputed. Where relevant, the disputes are noted. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Lease to terminate it before expiration of its stated Term (as extended pursuant to its terms by a letter to the Iversons dated May 15, 2014). Mr. Iverson so admitted, and the Iversons cannot produce admissible evidence to prove otherwise.

B. **2015 Annual Report**

On August 25, 2015, Martin Marietta submitted an annual report to DRMS as required by state law. The report included a map of the Iverson site. Mr. Iverson submitted a letter dated February 18, 2016, to DRMS complaining that the 2015 annual report did not note that two spillways "washed away May 12, 2015" due to flooding. Martin Marietta subsequently submitted a revised map for the 2015 annual report that noted the spillway washout; Martin Marietta's submission also noted that the spillways were re-installed.

C. **Iverson Pit Site Reclamation**

On June 21, 2018, the Iversons submitted a letter to Colorado DRMS raising "concerns that the reclamation improvements are not constructed correctly and are not adequate to survive future floods," attaching an engineering report from John D. Allis of TZA Water Engineers as support. In the letter and in the report, the Iversons and their engineer asserted that (i) a "low area in the riverside berm located at the northwest corner" should be raised to an elevation of 4686.0 feet, (ii) the riverside berm should be protected by riprap (rock) on both sides for approximately 3,200 feet, and (iii) the spillways should be larger.

Martin Marietta's engineer, Tetra Tech, submitted to DRMS a response to the TZA Water Engineers' analysis, addressing each comment in turn. The Iversons' engineer replied to Tetra Tech's letter on September 13, 2019.

After these submissions, DRMS issued a written resolution of the Iversons'

5

complaint on December 17, 2019, that resolved each of the Iversons' complaint topics against them and in Martin Marietta's favor.

The Iversons did not appeal the DRMS staff's resolution of their complaint to the Colorado Mined Land Reclamation Board, nor did they file a lawsuit against DRMS challenging its resolution of their complaint.

On August 18, 2020, DRMS approved a request to release a portion of the permit area from further reclamation responsibility. The area released consisted of "1.50 acres for the conveyor corridor and railroad crossing." On September 23, 2020, DRMS approved another request to release a portion of the permit area from further reclamation responsibility. The area released consisted of all "37.00 acres surrounding the lake."

This release approval followed an inspection of the site by DRMS staff, during which DRMS discussed the request with Mr. Iverson. The Iversons did not appeal the release of the 37 acres surrounding the lake from further reclamation responsibility to the Colorado Mined Land Reclamation Board, nor did they file a lawsuit against DRMS challenging its release of the 37 acres surrounding the lake from further reclamation responsibility.

### D.     Denial of 2020 Release Request

On December 21, 2020, Martin Marietta filed with DRMS a request for full release of the remaining permitted area for the Iverson Pit, consisting of 28.0 acres that includes the lake itself and an access corridor to it as depicted on the map included with the request. Mr. Iverson submitted a comment on the release request dated January 20, 2021, that alleged the document was "falsified" because "[s]pillways and Poudre River have been edited for no honorable reason."

DRMS denied the December 21, 2020, release request on February 11, 2021. In its denial letter, DRMS referenced a comment letter from the Colorado Division of Water Resources ("DWR") as "the specific reasons for the . . . denial." DWR's comment letter, which was attached to DRMS's release request denial, stated that the release should be denied because "the exposed groundwater pond at the Iverson Pit site is not included in any valid substitute water supply plan or decreed augmentation plan."

### III. ANALYSIS

**A.     Counterclaim**

The Iversons both bring a Counterclaim for breach of contract with respect to the Gravel Lease, which contains six subparts (a)–(f) [2]:

> Plaintiff has failed to meet their obligations as set out in the Gravel Property Lease executed on September 13, 2004, and is therefore in breach of contract.
>
> a. Plaintiff has failed to meet their obligations to pay royalty payments and non-refundable annual advanced minimum royalty payments for the years required for the restoration of the property according to the Gravel Property Lease. Paragraph 16 B of the Gravel Property Lease states in part that "The Company shall have the right, at its option, to terminate this Lease at the end of any Lease Year during the term by giving at least sixty (60) days prior written notice to Lessor. For early termination of the Lease without completion of mining by the Company of all economically recoverable Materials from Property, Lessor shall be entitled to receive additional compensation in the form of two (2) non-refundable annual advanced minimum royalty payments for the two years required for the restoration of the property described in paragraph 19 after the date of termination, and any and all royalties due." Plaintiff has not provided or taken actions necessary to provide the required royalty payments to date. The exact amount of royalties is unknown to date as

---

[2] Martin Marietta states that although it believes subpart (a) of the Counterclaim lacks merit, it does not seek dismissal of or summary judgment on that argument. (ECF No. 66 at 4 n.3.)

7

Plaintiff has not provided a final statement.

b. Plaintiff has failed to complete the reclamation and restoration of the Iverson Pit and surrounding property to date. Existing conditions of the spillway structures, final site grading, adequacy of the improvements to survive future floods and long-term stability of the site have not been addressed and finalized for Defendant to obtain a final augmentation plan. Paragraph 16 C of the Gravel Property Lease states in part "upon termination of this Lease for any reason, the Company shall continue to be liable for the performance of all obligations and the satisfaction of all liabilities to Lessor including, but not limited to, the payment of all royalties which have accrued prior to the date of termination and the compliance with all laws, regulations, and permit conditions that apply to the Property and the operations on the Property, including, but not limited to all reclamation, environmental and land use laws, regulations and permit conditions." Plaintiff has not provided or taken actions necessary to meet the terms of the Gravel Property Lease.

c. Plaintiff, in its reclamation attempt, removed 20,000 tons of contaminated rock and debris infused topsoil and agreed to replace it with 22,000 tons of topsoil. Plaintiff removed 20,000 tons of contaminated soil but did not replace it causing several project areas to be flood prone and harmful. Defendant's engineering report prepared by Lamp Rynerson confirms these conditions.

d. Plaintiff's failure to meet State of Colorado project design requirements by the reckless diversion of the Poudre River across Defendant's land has created dangerous flood hazard conditions to the local community including the City of Greeley, damaged Defendant's property and caused lost revenue.

e. Plaintiff[']s falsification of the 2015 Annual Report to the Colorado DRMS and 2020 surety release request application (SL-2) to the Colorado DRMS contains falsified information, is suspect and caused Defendant harm.

f. Colorado DRMS field inspector Mr. Peter Hays, who has considerable contact with Plaintiff and other projects in the region has taken it upon himself to approve dam/spillway structures and elevations with no authority or expertise. The

8

> dam/spillways and elevations inspections are the responsibility of the State Engineers Office under state statutes. Colorado DRMS field inspector Mr. Peter Hays'['s] reluctance to cite Plaintiff for falsification of documents furnished by Plaintiff to the State of Colorado for whatever reason is concerning. DRMS field inspector Mr. Peter Hays'['s] actions caused Defendant harm.

(ECF No. 9 at 9; ECF No. 22 at 6.)[3]

    1.    <u>Subparts (b), (c), (d)</u>

Martin Marietta argues that with respect to subparts (b), (c), (d), and (f)[4], the Iversons have failed to exhaust their administrative remedies. (ECF No. 66 at 13 (citing *City and Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212 (Colo. 2000) (explaining that if complete, adequate, speedy administrative remedies are available, a party must pursue them before filing suit).) Subparts (b), (c), and (d) are premised on the allegation that Martin Marietta has failed to adequately complete reclamation of the property surrounding the Iverson Pit, including, but not limited to arguments concerning topsoil and design requirements. Martin Marietta points out that the Iversons unsuccessfully raised these complaints about site reclamation to DRMS, which ultimately rejected their arguments and released the site and area surrounding the lake from further reclamation responsibility. (ECF No. 66 at 12.) The Iversons admit that

---

[3] The Iversons' Answers and Counterclaims were filed while the Iversons were proceeding in this action *pro se*. Their Counterclaims are substantively identical, except that at the end of almost every paragraph in Timothy Iverson's counterclaim he writes, "This has caused Defendant harm." The Court did not add that language above but notes the distinction here. The differences do not affect the Court's analysis or conclusions in this Order.

    Additionally, because the answers and counterclaims are virtually identical, like Martin Marietta (ECF No. 66 at 1 n.2), the Court refers to a single Counterclaim and a single impossibility defense brought by both parties.

[4] The Court addresses subpart (f) in Part III.A.2, and therefore, will not discuss it in this section of the Order.

9

they did not appeal DRMS's resolution of their complaint or releases of the areas around the pit to the Colorado Mined Land Reclamation Board or file suit against DRMS within the time allowed by the Colorado Administrative Procedure Act ("APA").  As such, Martin Marietta argues that the Court should dismiss these arguments under Rule 12(b)(1) for lack of subject matter jurisdiction or, alternatively, enter summary judgment in its favor.

In its Motion, Martin Marietta explains the DRMS regulations applicable here, as well as the Colorado APA statute of limitations provisions.  (ECF No. 66 at 13 (citing 2 Colo. Code Reg. 407-4, Rule 1.4.11(1)(b) (aggrieved party must appeal DRMS staff decision by petitioning for hearing before Mined Land Reclamation Board within 30 days of staff action) and Colo. Rev. Stat. § 24-4-106(4) (any person aggrieved by agency action may commence an action for judicial review in district court within 35 days after agency action becomes effective)).)  It contends that the Iversons seek judicial relief here to "rehash their prior complaints to Colorado DRMS about the reclamation work on the Property surrounding the Pit" and that the Court lacks jurisdiction over these claims because the Iversons failed to exhaust their administrative remedies.  (*Id.* at 14.)

In response, the Iversons argue that Martin Marietta's request is improper because although the Motion is framed as one under Rule 12 or Rule 56, it is really a motion *in limine* intended to limit the arguments and facts the Iversons can advance to support the Counterclaim at trial.  (ECF No. 68 at 6.)  Additionally, the Iversons argue that the doctrine of exhaustion of administrative remedies simply does not apply in this context.  Instead, they rely on Colorado case law explaining that the doctrine "applies typically in a controversy between a private party and a governmental agency, which

has its own administrative review process." *New Design Constr. Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1178 (Colo. App. 2008); *see also Brown v. Jefferson Cnty. Sch. Dist. No. R-1*, 297 P.3d 976, 980 n.4 (Colo. App. 2012) ("[T]he doctrine of administrative exhaustion typically does not, in the absence of a statutory scheme providing otherwise, apply to disputes between private parties involving private interests.").

The Court's decision on this issue turns on the Iversons' plain statement that they "do not seek judicial review of the DRMS's administrative action in approving Plaintiff's requests for release of reclamation responsibilities." (ECF No. 68 at 8.) To wit, they do not dispute that they did not appeal any of DRMS's decisions. They also argue that "[n]o statutory or regulatory scheme pertinent to DRMS construction material permits requires the Iversons to engage in an administrative process before commencing a breach of contract action against another private party." (*Id.*) Although Martin Marietta construes the Iversons' Counterclaim as a "collateral attack" on DRMS's determination that the reclamation at the site was adequate, the Iversons are not suing DRMS or directly attacking its determinations; rather, they are countersuing Martin Marietta—a private party—using arguments they already unsuccessfully presented to DRMS. Nevertheless, the two are simply different lawsuits.

Accordingly, the Court declines to dismiss subparts (b), (c), and (d) for failure to exhaust the Iversons' administrative remedies. However, the Court finds it important for the future of this litigation to point out that while it will not preclude the Iversons from bringing the arguments raised in subparts (b), (c), and (d) at trial, the Court will be the factfinder at trial. And DRMS has spoken clearly on the issues the Iversons raise and

has rejected their position. Although these arguments may proceed, the Court finds the decisions already rendered by DRMS exceedingly persuasive—and potentially definitive—on the issue of whether Martin Marietta has breached the Gravel Lease on these grounds. As such, although the Court will not prejudge these matters, the Iversons should carefully consider the wisdom of proceeding on such issues at trial.

2. Subparts (e) and (f)

For a court to have subject matter jurisdiction, a plaintiff must have standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). At its "irreducible constitutional minimum," standing has three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must suffer an "injury in fact" that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Id.* Second, the injury must be traceable to the challenged action of the defendant. *Id.* Third, it must be likely that the injury will be redressed by the relief requested. *Id.* Standing is determined as of the time the action is brought. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005).

Martin Marietta argues that the Iversons lack standing to bring their claims about "falsified information" in certain submissions to DRMS (subpart (e)) and a DRMS employee purportedly exceeding his authority or expertise (subpart (f)) because they have not suffered a concrete injury in fact, much less one that is fairly traceable to Martin Marietta's actions or that could be redressed by a judgment against it. (ECF No. 66 at 16.)

With respect to the Iversons' first argument in subpart (e), Martin Marietta states that after Mr. Iverson submitted a complaint to DRMS alleging that the 2015 Report included a "falsification" because it included a map that did not mention that flooding in

2015 had caused spillways to wash out, at DRMS's direction, Martin Marietta submitted a revised map to DRMS that noted this event.  (*Id.* at 17.)  The Iversons admit these facts in their response.  (ECF No. 68 at 4 ¶¶ 10–11.)  Because Mr. Iverson's complaint about allegedly "falsified information" was resolved, Martin Marietta argues that the Iversons lack standing to assert this part of their Counterclaim.

With respect to the Iversons' second argument in subpart (e) concerning the 2020 release request application that Martin Marietta filed with DRMS, Martin Marieta points out that the Iversons admit in their response that on February 11, 2021, DRMS denied the 2020 release request because the exposed groundwater at the Iverson Pit was not included in a valid SWSP or decreed augmentation plan.  (ECF No. 68 at 4–5 ¶¶ 24–27.)  Accordingly, even if the allegation that Martin Marietta submitted falsified information to DRMS in its 2020 release request were true, the Iversons experienced no concrete injury because the application was denied.

Finally, with respect to subpart (f), Martin Marietta emphasizes that none of the facts alleged therein involve Martin Marietta.  (ECF No. 66 at 18.)  Instead, the Iversons allege that various actions of Peter Hays, a DRMS field inspector, caused them harm.  (ECF No. 22 at 6.)  Thus, Martin Marietta argues that any purported injury the Iversons suffered at Mr. Hays's hands is not traceable to and cannot be redressed by a judgment against Martin Marietta.  (ECF No. 66 at 18–19.)

In the Iversons' response, they do not address the merits of Martin Marietta's arguments.  (ECF No. 68 at 11.)  Instead, they argue that Martin Marietta attempts to dismiss arguments on procedurally improper grounds, namely that dismissal of their arguments (as opposed to claims) does not divest the Court of subject matter

jurisdiction and that Martin Marietta's motion for dismissal or summary judgment is a disguised motion in *limine* to limit what arguments and facts they can introduce at trial.

The Court agrees with Martin Marietta that the Iversons lack standing to bring their breach of contract Counterclaim under the theories alleged in subparts (e) and (f) because they have not demonstrated that they have suffered an injury in fact. As explained above, Martin Marietta submitted an amended report to address any missing information concerning the spillway, and DRMS denied the 2020 release request; accordingly, the Iversons cannot have suffered—and do not argue in their response that they suffered—any injury due to Martin Marietta's alleged actions with respect to subpart (e). Similarly, there is no alleged action by Martin Marietta in subpart (f) whatsoever; the allegations all concern Mr. Hays. Accordingly, the challenged conduct is not traceable to Martin Marietta, nor could it be redressed by a judgment against Martin Marietta.

The Court has considered matters outside the pleadings in making its ruling, and therefore, the Court converts this portion of Martin Marietta's Rule 12(b)(1) motion to a Rule 56 motion. Therefore, the Court grants summary judgment in favor of Martin Marietta on the Iversons' Counterclaim brought under subparts (e) and (f).

**B.     Impossibility Defense**

Under the defense of impossibility of performance, a party's breach of its contractual obligation will be excused when "changed circumstances have rendered the promise vitally different from what reasonably should have been within the contemplation of both parties when they entered into the contract." *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1276 (10th Cir. 2005) (quoting *Colo. Performance Corp. v. Mariposa Assocs.*, 754 P.2d 401, 407 (Colo. App. 1987)).

The Iversons' impossibility defense is:

> Impossibility of performance.  Defendant's inability to perform contractual obligations is justifiable because Plaintiff has failed to build spillways to the specifications set out in the contract as required and approved by the Colorado DRMS and State Engineers's [*sic*] Office.  It is impossible for Defendant to obtain a decreed plan for augmen[ta]tion, an approved SWSP or fill the pit until such time as Colorado DRMS and State Engineer's Office has given final approval of the reclamation.
>
> Defendant reserves the right to assert other defenses as discovery and investigation in this matter is accomplished and requests leave of the Court to amend this Answer or add additional affirmative defenses, if necessary, at a later date.

(ECF No. 9 at 8; ECF No. 22 at 5.)[5]

In their response, the Iversons do not offer any arguments related to the theory of impossibility raised in their Answers.  (ECF No. 68 at 11–13.)  Instead, they now argue that during Martin Marietta's performance of the Gravel Lease, Martin Marietta was instructed by DWR that the maximum surface area of ground water it could expose to cover evaporative depletions was 22.1 acres.  (ECF No. 68 at 11–12.)  Nevertheless, the Iversons state that Martin Marietta increased the amount of exposed ground water beyond 22.1 acres to 27.62 acres without sufficient water shares in place to cover the resulting depletions.  (*Id.* at 12.)  Under these "unanticipated" circumstances, the Iversons contend that performance of their promise to provide water for a final augmentation plan was made "vitally different than what was reasonably within the contemplation of the Iversons throughout the term of the Lease" and their impossibility defense should survive the Motion.  (*Id.* at 12–13.)

---

[5] As with the Counterclaim, the substance of the Iversons' impossibility defense is virtually identical, with minor differences that do not change the Court's analysis.

With respect to the initial theory of impossibility pled in the Iversons' Answers, the Court finds that it is waived because the Iversons did not address it in their response. *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived).  And, assuming *arguendo* that the Iversons *had* offered argument in their brief concerning this theory of impossibility, they have admitted facts that demonstrate that Martin Marietta is entitled to summary judgment on this theory.  Namely, the Iversons admit that they are responsible for obtaining an augmentation plan decree for the Iverson Pit and DRMS approved releases of the area around the Iverson Lake from further reclamation responsibility and has confirmed that the only thing standing in the way of full release is the lack of an augmentation plan decree.  (ECF No. 66 ¶¶ 4, 24, 27; ECF No. 68 ¶¶ 4, 24, 27.)  Moreover, Martin Marietta emphasizes that the Iversons failed to rebut the law it cited demonstrating that an augmentation plan application can be filed at *any* time (ECF No. 66 at 19–22; *see generally* ECF No. 68); therefore, the Court finds that Martin Marietta is entitled to summary judgment on the theory of impossibility asserted in the Iversons' Answers.

With respect to the new theory of impossibility raised in the Iversons' response, Martin Marietta points out in its reply (ECF No. 71 at 12) that the Tenth Circuit has stated that "[t]he liberalized pleading rules . . . do not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004) (citation omitted).  If the Court allowed this manner of litigation, it "would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately

16

unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances." *Id*. (citation omitted).

In the pleadings, the Iversons did not mention their impossibility defense that they cannot perform because the size of the lake is larger than they anticipated it would be when they signed the Gravel Lease.  Thus, the Court finds that their defense fails on this procedural basis.  For the following reasons, it also fails as a matter of law.

Paragraph 6 of the Gravel Lease unambiguously states that the Iversons "shall be responsible for *any* augmentation plan made necessary by the Company's surface exposure of groundwater, dewatering or mining operations on the Property."  (ECF No. 66-2 at 4 (emphasis added).)  The Court agrees with Martin Marietta's statements that the Gravel Lease "does not qualify this responsibility" or "include a maximum amount of acreage or water for which the Iversons are responsible."  (ECF No. 71 at 12.)  The Iversons were free to bargain for qualifications with respect to obtaining a final augmentation decree.  Instead, the Gravel Lease requires that Iversons assume responsibility for "any augmentation plan made necessary."  (ECF No. 66-2 at 4.)

Further, the Iversons do not identify evidence showing either party believed that their obligation was limited to the water supplies they owned at the time the parties executed the Gravel Lease, and Martin Marietta points out that the Iverson Lake is "much smaller than Martin Marietta's mining permit allowed."  (ECF No. 71 at 13 (citing *Magnetic Copy Servs., Inc. v. Seismic Specialists, Inc.*, 805 P.2d 1161, 1165 (Colo. App. 1990) ("If the occurrence is reasonably foreseeable, the courts typically take the position that the promissor has assumed the risk of impossibility or frustration.")).)  Accordingly, the Court finds that even if the Iversons had properly raised this second

theory of impossibility—which they did not—that it is without merit.

Accordingly, the Court grants summary judgment on the Iversons' impossibility defense in Martin Marietta's favor.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS that the Motion (ECF No. 66) is GRANTED IN PART AND DENIED IN PART as follows:

1. The Motion is DENIED with respect to subparts (b), (c), and (d) of the Counterclaim;

2. The Motion is GRANTED with respect to subparts (e) and (f) of the Counterclaim;

3. The Motion is GRANTED with respect to the impossibility defense; and

4. Martin Marietta will be entitled to judgment in its favor and against the Iversons on the impossibility defense and subparts (e) and (f) of the Counterclaim at such time as the Clerk enters final judgment on all claims of all parties in this action.

Dated this 19th day of September, 2023.

BY THE COURT:

William J. Martínez
Senior United States District Judge